Greta Starks v. Commissioner.
Starks v. Commissioner
Docket No. 844-62.
United States Tax Court
T.C. Memo 1966-134; 1966 Tax Ct. Memo LEXIS 147; 25 T.C.M. (CCH) 676; T.C.M. (RIA) 66134; June 20, 1966
William C. Hague, for the petitioner. Charles H. Powers, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioner's income tax and additions thereto for the years and in the amounts as follows: Addition to
the Tax Sec.
6651(a),
I.R.C.
Year
Deficiency
of 1954
1954
$ 976.00
$ 244.00
1955
17,031.80
4,257.95
1956
1,126.44
281.61
1957
904.37
226.09
1958
817.36
204.34
The only issue is whether certain money and property received by petitioner during the *148 years in question constituted gross income to her within the meaning of section 61(a) of the Internal Revenue Code of 1954. Findings of Fact Petitioner, who was unmarried during the years in question, lives at 16900 Parkside, Detroit, Michigan. She filed no Federal income tax returns for the years 1954 through 1958. She was 24 years old in 1954 and during that year and throughout the years 1955, 1956, 1957 and 1958 she received from one certain man, amounts of money for living expenses, and a house (he gave her the cash to buy it in her name), furniture, an automobile, jewelry, fur coats, and other clothing. This man was married and about 55 years old in 1954. Respondent in his notice of deficiency stated that he determined that the property and money petitioner received each year constituted income received by petitioner "for services rendered" and in his computation he held her subject to self-employment tax. He explained his computation of the deficiency for each year by reference to Exhibit A which was attached to the notice of the deficiency. Page 13 of this Exhibit A is as follows: Analysis of living expenses and
assets received for serv-
ices rendered.
Year 1954
1955 Oldsmobile automobile
$ 3,000.00
Weekly allowance ($150.00 X 20
weeks)
3,000.00
TOTAL
$ 6,000.00
Year 1955
16900 Parkside
$22,211.08
Roberts Furs
5,038.00
Saks Fifth Avenue
828.18
Piano and furniture
6,000.00
Weekly allowance ($150.00 X 52
weeks)
7,800.00
TOTAL
$41,877.26
Year 1956
Roberts Furs
$ 1,570.00
Saks Fifth Avenue
3,543.17
Miscellaneous Household expense
1,500.00
TOTAL
$ 6,613.17
Year 1957
Furs by Roberts
$ 121.00
Saks Fifth Avenue
1,353.19
Living expenses
4,000.00
TOTAL
$ 5,474.19
Year 1958
Furs by Roberts
35.00
Saks Fifth Avenue
978.79
Living Expenses
4,000.00
TOTAL
$ 5,013.79
*149 The money and property received by petitioner during the years in question were all gifts from the above described man with whom she had a very close personal relationship during all of the years here involved. Opinion The question in this case is whether the advancements made by respondent's witness were gifts under section 102, Internal Revenue Code of 1954, or in some manner payments that would constitute taxable income. The question is one of fact. There were two witnesses in this case. Petitioner took the stand and testified that she was not gainfully employed during the years here involved except for an occasional modeling job in 1954 for which her total receipts did not exceed $600. She said she had no occupation and was not engaged in any business or practicing any profession and had no investments that yielded her income during the years in question. She in effect admitted the receipt of the items of money and property recited in respondent's notice of deficiency but said they were all gifts made to her by the man she identified as sitting in the front row in the courtroom. She testified that this man gave her money to defray her living expenses, *150 and about $20,000 cash to buy the house at 16900 Parkside in 1955. She testified that she mortgaged this house for about $9,000 and she and this man lived for a time off of the proceeds of this loan. She said that this man gave her the furniture, jewelry, and clothing but she never considered the money and property turned over to her by this man as earnings. She said she had, during the years in question, love and affection for this man and a very personal relationship. The only other witness in this case was the alleged donor who sat in the courtroom during all of petitioner's testimony. He was called to the stand by respondent. He admitted on direct examination (there was no cross-examination) that he had advanced petitioner funds for the purchase of a house, clothes, fur coat, and furniture for the house. He was asked the purpose of the payments and he replied: "To insure the companionship of Greta Starks, more or less of a personal investment in the future on my part." The only other portion of his testimony that might be said to have any bearing on whether the advancements were gifts or not is the following: Q. In advancing Greta Starks monies to purchase the properties I *151 previously mentioned, what factors did you take into consideration pertaining to your wish or desire of securing the permanent companionship of Greta Starks? A. The monies were advanced as I considered necessary. The purchase of a house was considered a permanent basis to last ten, twenty years, not for a short while. Respondent, of course, asks us to believe the testimony of his witness for respondent's counsel stated he was not to be considered a hostile witness. The witness was only asked a few questions. He had heard all of petitioner's testimony to the effect that the money, home, car, furniture, clothing, etc. were gifts by him to her. It is somewhat significant that he was not asked the direct question as to whether the advancements of money and property, which he admits he made, were gifts by him to her. We have quoted the only two statements he made that throw any light at all on the issue of whether the advancements were gifts or earnings. Such passages in his answers to the effect that he was making a "personal investment in the future" or the house purchase was "considered a permanent basis" are incomprehensive and rather absurd as statements of purpose. His testimony, *152 in so far as it can be understood at all, tends to corroborate petitioner. He gives as his purpose for making the advancements "to insure the companionship" of petitioner. This can well be his purpose for making the gifts. It certainly serves no basis for the argument advanced by respondent on brief to the effect that her "companionship" was a service she rendered in return for the money and property she received. [1] Evidently respondent would argue the man paid her over $41,000 for her companionship in 1955 and $5,000 or $6,000 for her companionship in the other years. We are not called upon to determine the propriety of the relations that existed between petitioner and her admirer during the five years in question. *153 He testified he had not seen her for five or six years. Petitioner was married in 1961 and is now living with her husband and mother. It is enough to say that all of the circumstances and the testimony of petitioner and even of respondent's witness support her statement that she received gifts of money and property during the five years in question and no taxable income. Respondent devotes a few lines in his brief to an argument that she failed to establish what she received in 1954 and the first few months in 1955 were gifts. He points to one place in her cross-examination where she said she did not meet the alleged donor until sometime in the Spring of 1955. She obviously misspoke and named the wrong year. Respondent's determination of deficiency has her receiving gifts from him and a weekly living allowance in 1954. At another place in her testimony she testified as to the money she received from the alleged donor in the year 1954 and it was then that she identified him in the courtroom. Respondent's determination of deficiency as to 1954 property she received is at variance with admitted facts. He has her receiving a new 1955 Oldsmobile in 1954 and he introduces a sales slip *154 showing she received the car in June of 1955. Petitioner was testifying from memory in 1966 and being pressed on cross-examination as to the date she first met a man, about a dozen years before. Since at another place she had earlier said in effect she had met him in 1954 and that squares with other facts, we choose to believe her first statement. Decision will be entered for the petitioner. Footnotes
1. On brief respondent argues: "[A] married individual 30 years older than the petitioner, sought and acquired the 'companionship' of the petitioner. 'Companionship' was the service sought by [said married individual] and 'companionship' is the service that he received. In exchange for this service, [the said married individual] housed, clothed and fed the petitioner. Certainly, the 'companionship' of the petitioner constituted 'services rendered' * * *."↩